United States District Court
Southern District of Texas
**ENTERED**
November 03, 2023
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| Professional Association of Court | § | |
| Security Officers – Southern District | § | |
| of Texas, | § | |
| *Plaintiff,* | § | |
| | § | **CIVIL ACTION NO. 4:23-cv-01813** |
| v. | § | |
| | § | |
| Centerra Group, LLC, a subsidiary of | § | |
| Constellis Corporation, | § | |
| *Defendant.* | § | |

### MEMORANDUM & ORDER

Plaintiff Professional Association of Court Security Officers ("PACSO" or "Plaintiff") brought this action under section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, to compel Defendant Centerra Group, LLC ("Centerra" or "Defendant") to arbitrate an employment grievance pursuant to the terms of a Collective Bargaining Agreement ("CBA") between the parties. ECF Doc. 1.

Defendant filed a Motion for Summary Judgment in response to Plaintiff's Complaint. ECF Doc. 6. Plaintiff filed a Cross-Motion for Summary Judgment. ECF Doc. 9. After considering the Motions, briefings, arguments made by both parties during the hearing, and the applicable law, the Court **DENIES** Defendant's Motion and **GRANTS IN PART** Plaintiff's Motion.

### I.     BACKGROUND

Defendant employs security personnel, including Court Security Officers ("CSOs") for Houston's Bob Casey United States Courthouse, pursuant to a contract with the United States Marshals Service ("USMS"). Defendant's employees are represented by Plaintiff, a labor organization.

On June 13, 2022, USMS emailed Defendant a letter requesting that Defendant investigate

alleged performance standard violations of CSO Jerome Powell and further requesting that Powell "be removed from performing services under the contract pending the resolution" of the investigation. ECF Exhibit 6-1 at 3. Defendant complied with the agency directive and removed Powell from the contract on or about June 14, 2022. ECF Doc. 6 at 2. USMS restored Powell's ability to work on the contract on or about August 30, 2022. ECF Doc. 1 at 3. Powell was removed from the contract for a total of 56 workdays. During that period, Defendant asked Powell to work for the company off-site in Richmond, Texas for three days in July, meaning that in total Powell was unpaid for 53 days. *Id.*; *see also* ECF Doc. 9 at 6; ECF Exhibit 9-2 at 5.

Plaintiff attempted to grieve Defendant's actions as a violation of the just cause provision in Article 6, § 6.1 of the CBA; Defendant maintained throughout the process that Plaintiff's claims were not grievable under Article 5, § 5.2 of the CBA. *See* ECF Doc. 6 at 2-3; ECF Doc. 9 at 2-4. Plaintiff invoked arbitration. In response, Defendant sent Plaintiff an email which Plaintiff construes as the company declining to proceed with arbitration. ECF Doc. 9 at 4. In the email, Defendant reiterated its position "that the parties specifically excluded removal actions required by the Government from the grievance process." ECF Exhibit 6-7 at 2. Plaintiff then filed the present lawsuit seeking to compel arbitration.

## II.    LEGAL STANDARD

### A.  Summary Judgment Standard

Summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The court can consider any evidence in "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Crawford*, 234 F.3d at 902.

The party moving for summary judgment bears the burden of demonstrating the absence of a genuine dispute of material fact. *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001). If the moving party meets this burden, the non-moving party must go beyond the pleadings to find specific facts showing that a genuine issue of material fact exists for trial. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Summary judgment is appropriate if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322. "When parties file cross-motions for summary judgment, [the court must] review 'each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party.'" *Cooley v. Hous. Auth. of City of Slidell*, 747 F.3d 295, 298 (5th Cir. 2014) (quoting *Ford Motor Co. v. Texas Department of Transportation*, 264 F.3d 493, 498 (5th Cir. 2001)).

### B.  Standard for Determining Arbitrability of Dispute

To determine arbitrability, courts conduct a two-step analysis. "First, the court must determine whether the parties agreed to arbitrate the dispute. Once the court finds that the parties agreed to arbitrate, it must consider whether any federal statute or policy renders the claims nonarbitrable." *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003) (quoting *R.M. Perez & Assocs., Inc. v. Welch*, 960 F.2d 534, 538 (5th Cir. 1992)). The first step of this analysis requires the Court to determine (1) whether the parties entered into a valid, enforceable arbitration agreement (contract formation inquiry), and (2) whether the claim at issue is covered by that arbitration agreement (contract interpretation stage). *See Kubala v. Supreme Prod. Servs.,*

*Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). Generally, both components are questions for the court,

unless the arbitration agreement contains a clause delegating to the arbitrator the power to rule on

the arbitrability of a specific claim. *Id.* The court determines only whether the parties agreed to

submit a grievance to arbitration and does not consider the merits of the claims to be submitted to

arbitration. *See Oil, Chem. & Atomic Workers' Int'l Union, Loc. 4-447 v. Chevron Chem. Co.*, 815

F.2d 338, 340 (5th Cir. 1987).

### III.   ANALYSIS

#### A.  Relevant Terms of the CBA between Plaintiff and Defendant

Article 5, § 5.1 of the CBA states:

> For purposes of this Agreement, a grievance shall mean a claimed violation of this
> Agreement, except that this grievance procedure shall not be used for any action or order
> of removal of an Employee from working under the contract by the U.S. Government or
> revocation of required CSO credentials by the USMS provision for the removal of
> Contractor employees in Section H-9 of the Contract or its successor between the U.S.
> Marshals Service, U.S. Attorney's Office, members of the Judiciary and Walden Security.
> . . . If the U.S. Government decides that an Employee shall be removed then that decision
> is final and cannot be grieved. In addition, the grievance procedures outlined herein shall
> not apply where the Company is acting under express directives of the U.S. Government.

ECF Exhibit 6-8 at 17.

Article 6, § 6.1 of the CBA states:

> After completion of the probationary period . . . no Employee shall be dismissed or
> suspended without just cause.
> a. The Company's contract with the U.S. Government sets out performance standards for
> the CSOs in Section C of the Contract between the Company and the USMS. All
> Employees are required to comply with these standards. Failure to do so may lead to
> disciplinary action. . . .
> b. The Company may discipline Employees when necessary and discharge those who fail
> to uphold U.S. Government or Company standards. . . . All discipline shall be subject to
> the grievance and arbitration procedures, except for those issues involving the USMS
> contractual rights.

*Id.* at 20.

Article 4, § 4.1 of the CBA states that Defendant "reserves all rights which it heretofore

had except to the extent that those rights are expressly limited by the provisions of this

Agreement," including the rights to "assign work and schedule," "discharge, discipline, or suspend

for just cause," and "require any employee covered by this Agreement to perform any job or task

deemed necessary by the Company." *Id.* at 16-17.

### B.  Relevant Terms of Defendant's Contract with USMS

Section H.9 of the contract, which concerns the removal of CSOs for violations of the CSO
Performance Standards, states:

> (a) The Contractor shall be responsible for providing employees that meet the
> qualifications and requirements established under the contract. Any employee provided
> by the Contractor . . . that fails to meet the CSO performance standards set forth in
> Section C may be removed from performing services for the Government under this
> contract upon written request of the Contracting Officer. . . .
>
> (c) Any employee provided by the Contractor that the Contracting Officer asserts has
> failed to meet the performance requirements set forth in Section C Statement of Work,
> may be removed from performing services under this contract. The United States
> Marshals Service reserves the right to temporarily remove a CSO, IS, or CM under
> investigation for an alleged serious performance standard violation or criminal charge
> from performing under the contract. The individual shall be relieved of their service
> weapon and their credential must be returned to the USMS until the alleged incident is
> resolved.

ECF Exhibit 6-9 at 5.

### C.  Arbitrability of Dispute

Parties agree that a valid, enforceable arbitration agreement exists between them. *See, e.g.*,

ECF Doc. 9 at 15; ECF Doc. 6 at 1. Additionally, the parties' CBA does not contain a delegation

clause that would submit the question of arbitrability to an arbitrator. As the parties affirmed during

the hearing, whether the parties have agreed to submit the subject matter of the present dispute to

arbitration is a question to be decided by the Court. Thus, the remaining issue for the Court to

consider is whether the present dispute is covered by the parties' arbitration agreement.

Parties agree that, per § 5.1 of the CBA, the grievance and arbitration procedures cannot

be used for "any action or order of removal of an Employee from working under the contract by

the U.S. Government." ECF Exhibit 6-8 at 17.  However, parties disagree over the meaning of §

5.1 as well as its relationship to the just cause provisions in §§ 6.1 and 4.1 of the CBA.

Defendant asserts that Plaintiff "seeks to compel arbitration of [Powell's] removal and

Centerra's decision not to pay the employee while he was not working pursuant to USMS's

directive." ECF Doc. 6 at 1. Plaintiff refutes this characterization, maintaining that it is "**not

grieving, and does not contend**, that Grievant Powell could not be removed from the jobsite by

the USMS. But PACSO **_does_** maintain that Centerra, despite the removal, is still obligated to pay

Powell under the terms of the CBA, unless he is discharged or disciplined for just cause." ECF

Doc. 9 at 17. Plaintiff further contends that Defendant violated the CBA's just cause provisions

when it removed Powell from work and then restored him "all without the results of the

investigation being communicated to Powell or to PACSO by Centerra; without their being

informed what Performance Standards Powell had allegedly violated; and without a Discipline

Determination ever having been provided to Powell by Centerra." *Id.* at 9. Moreover, Plaintiff

claims that Defendant exercised its rights under § 4.1 of the CBA when it assigned Powell to paid

work in Richmond, Texas for three days while he was under investigation. ECF Doc. 9 at 13.

According to Plaintiff, "Centerra knew it had the right to make Powell work, and it clearly had the

ability to find work. PACSO's complaint here is that Centerra did not find him more, or at least

pay him." ECF Doc. 13 at 4-5.

Defendant counters by stating that "it is axiomatic that if one is not working, one is not

getting paid." ECF Doc. 6 at 8. Defendant argues that § 5.1 of the CBA, which states that the

USMS' decision to remove a CSO from the contract is final and cannot be grieved, "also means

that nonpayment during that same period is 'final and cannot be grieved.'" ECF Doc. 11 at 2.

Moreover, § 5.1, according to Defendant, "preempts the 'just cause' analysis." *Id.* at 6.

Plaintiff brought this suit against Defendant under section 301(a) of the LMRA. "Federal substantive law governs the interpretation and enforcement of collective bargaining agreements under section 301(a)." *United Paperworkers Int'l Union AFL-CIO, CLC v. Champion Int'l Corp.*, 908 F.2d 1252, 1256 (5th Cir. 1990) (citing *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 456 (1957)). But "state law, if compatible with the purpose of [section] 301, may be resorted to in order to find the rule that will best effectuate the federal policy." *Textile Workers Union of Am.*, 353 U.S. at 457. "In interpreting a labor contract, 'traditional rules for contractual interpretation are applied as long as their application is consistent with federal labor policies.'" *D.E.W., Inc. v. Loc. 93, Laborers' Int'l Union of N. Am.*, 957 F.2d 196, 199 (5th Cir. 1992) (quoting *United Paperworkers Int'l Union*, 908 F.2d at 1256). However, the construction and application of a CBA's terms cannot be "narrowly confined by ordinary principles of contract law" and "may be more readily expanded by implication than those of contracts memorializing other transactions." *Smith v. Kerrville Bus Co.*, 709 F.2d 914, 917 (5th Cir. 1983). This is because a CBA, unlike other contracts, is designed to regulate all aspects of an employer-employee relationship and is subject to federal labor law. *Id.*

Traditional rules for contractual interpretation in Texas courts include giving each provision "its reasonable, natural, and probable meaning when considered in relation to the whole" while avoiding "interpreting a contract so as to render any provision meaningless." *Richland Plantation Co. v. Justiss-Mears Oil Co.*, 671 F.2d 154, 156 (5th Cir. 1982) (internal quotation marks omitted) (quoting *Hennigan v. Chargers Football Co.*, 431 F.2d 308, 315 (5th Cir. 1970)). To begin its analysis, the Court notes that Defendant's position—that § 5.1 excludes Powell's *nonpayment* from the grievance and arbitration procedures—seems to render the CBA's clear just cause requirements "meaningless" in this context.

7

Additionally, the Supreme Court has instructed that "[a]n order to arbitrate [a] particular grievance should not be denied **unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute**. Doubts should be resolved in favor of coverage." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582–83 (1960) (emphasis added); *see also Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990) ("We resolve doubts concerning the scope of coverage of an arbitration clause in a contract in favor of arbitration."). In the Fifth Circuit, the presumption of arbitrability is "rebutted only if the party resisting arbitration shows either (1) the existence of an express provision excluding the grievance from arbitration or (2) the 'most forceful evidence' of a purpose to exclude the claim from arbitration." *Paper, Allied-Indus., Chem. & Energy Workers Int'l Union Loc. No. 4-2001 v. ExxonMobil Ref. & Supply Co.*, 449 F.3d 616, 620 (5th Cir. 2006) (quoting *Commc'ns Workers of Am. v. Sw. Bell Tel. Co.*, 415 F.2d 35, 39 (5th Cir. 1969)).

The CBA in this case contains an express provision excluding from grievance and arbitration "any action or order of removal of an Employee from working under the contract by the U.S. Government." ECF Exhibit 6-8 at 17. Clearly, Plaintiff cannot grieve Defendant's removal of Powell from performing services under the contract at the direction of USMS. But the Court cannot say "with positive assurance" that the inability to grieve a removal by implication necessarily encompasses the inability to grieve nonpayment. *United Steelworkers of Am.*, 363 U.S. at 582; *see also Warrior & Gulf Nav. Co.*, 363 U.S. at 584 (holding that a company's decision to contract out work was arbitrable, in part because there was no showing that the CBA's exclusion from grievance and arbitration "matters which are strictly a function of management" was designed to "encompass any and all forms of contracting out"). One can imagine a situation in which USMS's right to remove a CSO from performing services under its contract with Defendant does

not relieve Defendant of its CBA obligation to meet a just cause standard before suspending payment. Because the arbitration provision of the CBA is "susceptible of an interpretation that covers the asserted dispute," *United Steelworkers of Am.*, 363 U.S. at 582-83, the Court cannot accept Defendant's argument that Powell's "removal under the contract is one and the same with nonpayment resulting from his removal," ECF Doc. 11 at 5.

To bolster its position, Defendant points to the provision in the CBA stating that the "grievance procedures outlined herein shall not apply where the Company is acting under express directives of the U.S. Government." ECF Doc. 11 at 6. It is clear to the Court that Defendant was acting under express directives of the U.S. Government in *removing* Powell from the contract. Again, however, the Court is not convinced that Defendant was acting under express directives of the U.S. Government when it decided *not to pay* Powell. In fact, the record suggests that Defendant not only retained certain rights under Article 4, § 4.1 of the CBA after Powell was removed from the contract by USMS, but it also chose to exercise those rights when it provided Powell a temporary paid work assignment during his removal period. ECF Doc. 9 at 13.

Defendant contends that "USMS has the right to bar a CSO from working on the contract forever. Is PACSO claiming in that circumstance Centerra must continue to pay the employee *forever*?" ECF Doc. 6 at 9. While rhetorically attractive, this argument lacks relevance to the question before the Court: Have the parties agreed to submit this particular grievance to arbitration? Whether an employee is or should be entitled to pay during the removal period has no bearing on the Court's determination of arbitrability. Even if the underlying claim was obviously frivolous, the Court could not speak to its potential merits—that is the province of an arbitrator. *See, e.g.*, *Pastorini-Bosby Talent, Inc. v. Screen Actors Guild Inc.*, 81 F.3d 156 (5th Cir. 1996) ("Whether 'arguable' or not, indeed even if it appears to the court to be frivolous, the union's claim

that the employer has violated the collective bargaining agreement is to be decided, not by the court asked to order arbitration, but as the parties have agreed, by the arbitrator.").

Defendant's final key argument rests on the silences in the CBA: As Defendant points out, "[n]o provision of the CBA requires Defendant to pay a removed CSO or find alternative work for a removed CSO, especially so when the CSO is removed at the direction of the USMS." ECF Doc. 11 at 5. Defendant contends that the parties would have included in the contract if some portion of the removal was arbitrable, *id.* at 4, if the decision as to whether to pay an employee was a just cause decision, *id.*, or if they had intended for suspensions to be paid, *id.* at 5. According to Defendant, "the [parties'] intent is clear – the removal and its impact are not arbitrable." *Id.* at 4. The Court rejects this argument. As the Fifth Circuit has made clear, silence in a labor contract is "not dispositive of the intent" of the parties, in part because a CBA "may not anticipate every situation that may arise between employer and employee." *Smith*, 709 F.2d at 917; *see also Warrior & Gulf Nav. Co.*, 363 U.S. at 578 (stating that a CBA "is more than a contract; it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate.").

For the foregoing reasons, the Court finds that present dispute is covered by the arbitration agreement contained in the parties' CBA and should accordingly be submitted to arbitration. Additionally, neither the parties nor the Court has identified a federal statute or policy that renders the claims at issue nonarbitrable.

### D.  Attorney's Fees

Plaintiff contends that it is entitled to an award of attorney's fees under 29 U.S.C. § 185 because Defendant's "refusal to arbitrate is at odds with the plain text of the CBA." ECF Doc. 9 at 16. 29 U.S.C. § 185 does not itself provide for attorney's fees. However, the Supreme Court has held that "federal courts, in the exercise of their equitable powers, may award attorneys' fees when

the interests of justice so require." *Hall v. Cole*, 412 U.S. 1, 4-5, (1973). Specifically, a federal court may award attorney's fees "to a successful party when his opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 5 (internal quotation marks omitted). The underlying rationale is "punitive," and thus the "essential element" in triggering an award of fees is the existence of "bath faith" on the part of the opponent. *Id.* "The standards for bad faith are necessarily stringent." *Batson v. Neal Spelce Assocs., Inc.*, 805 F.2d 546, 550 (5th Cir. 1986).

Here, Plaintiff has not met the stringent standard of proving that Defendant has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons" in either litigating the arbitrability of the dispute or in its conduct otherwise so far in the litigation. *Hall*, 412 U.S. at 5. As other federal district courts have recognized, "a party should not be penalized for maintaining an aggressive litigation posture when its actions are not intended to burden the opponent with unnecessary expenditures of time and effort." *Sabine Indep. Seagoing Officers Ass'n v. Sabine Towing & Transp. Co.*, 805 F. Supp. 430, 436 (E.D. Tex. 1992), *aff'd sub nom. Sabine Indep. Seagoing Officers Ass'n v. Sabine Towing & Transp. Co.*, 68 F.3d 468 (5th Cir. 1995). There is no evidence to support an award of attorney's fees at this stage, and therefore the Court **DENIES** Plaintiff's request for attorney's fees.

### IV.    CONCLUSION

In sum, the Court determines that parties agreed, pursuant to their CBA, to arbitration, and that the scope of their agreement encompasses the dispute that is now before this Court. Accordingly, the Court hereby **ORDERS** as follows:

1. Plaintiff's Cross-Motion for Summary Judgment is **GRANTED IN PART.** Defendant is **ORDERED** to arbitrate the underlying grievance filed on behalf of Powell. However, Plaintiff's request for attorney's fees is **DENIED**;

11

2. Defendant's Motion for Summary Judgment is **DENIED**;

3. The case is **STAYED** pursuant to 9 U.S.C. § 3 pending the completion of arbitration proceedings; and

4. The Clerk is directed to administratively **CLOSE** this case pending arbitration.

      **IT IS SO ORDERED.**

      **SIGNED** at Houston, Texas on this the 3rd of November, 2023.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE